UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CYNTHIA THOMAS, | ) | Civil Action No.: 4:13-cv-0990-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| DILLON SCHOOL DISTRICT FOUR, | ) | |
| D. RAY ROGERS, ARTHUR McMILLAN | ) | |
| and POLLY ELKINS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

This is an employment discrimination case.  Plaintiff alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., violations of 28 U.S.C. §§ 1981, 1983, a state law claim for defamation and a state law claim for civil conspiracy.  Presently before the court is Defendants' Motion for Summary Judgment (Document # 48).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  This report and recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff, a black female, was hired as a library assistant by Dillon County School District Two in the 2007-2008 school year.  Personnel Action Form–Hire (Ex. 1 to Pl. Response).  Plaintiff was promoted two months later to secretary.  Personnel Action Form–Promotion (Ex. 2 to Pl. Response). Plaintiff continued to work for Dillon County School District Two as a secretary for the 2007-2008, 2008-2009, 2009-2010, and 2010-2011 school years. During the 2010-2011 school year,

Plaintiff was a secretary in the food services department. Pl. Dep. 64-65 (Ex. 3 to Pl. Response). In food services, Plaintiff was responsible for personnel matters (such as food employees' pay, direct deposit, and insurance paperwork), food and supply ordering, food inventory, and accounts payable, amongst other tasks. Id. Additionally, in the 2010-2011 school year Plaintiff took on a part-time position doing food ordering and inventory for Dillon County School District One and received additional compensation for the same. Pl. Dep. 68-70.

Districts One and Two merged on July 1, 2011 creating the Defendant Dillon County School District Four (District Four). As part of the consolidation process, a Consolidation Committee comprised of administration and a board member each from District One and District Two, reviewed the number and types of positions needed in the newly consolidated District. The Consolidation Committee also created position titles and set salaries and salary schedules for the consolidated District Four, which were subsequently approved by the Board of Trustees for Dillon Four. In May 2011, those employees of the two former school districts were advised of their new position and salary. Some former employees of District Two and District One had their salaries decreased as the result of consolidation while others received salary increases or did not experience any change in their salary. Elkins Dep. 55-56 (Ex. to Def. Motion); Rogers Dep. 42 (Ex. to Def. Motion).

By letter dated May 19, 2011, from District Four Superintendent Ray Rogers, Plaintiff was informed that she was being offered a secretarial position in District Four's Food Service Department at a salary of $25,104.00 and a $750.00 supplement for travel. Consolidation Letter (Pl. Dep. Ex.4). In this new position, Plaintiff would have the same duties and responsibilities that she previously had performed for two districts, which now had been consolidated into a single school district. Plaintiff believed that it was unfair that her salary in District Four would be the same salary that she had been

paid by former District Two because she would have additional work than she had previously in a single position. Pl. Dep. 77.  Plaintiff told Superintendent Ray Rogers and Associate Superintendent for Human Resources Polly Elkins that she believed her salary should be increased.  Pl. Dep. 77. However she was informed that her salary would not be increased because "all secretaries and bookkeepers had to stay on the same pay scale." Pl. Dep. 74, 77; Rogers Aff. ¶ 5.  Defendant Arthur McMillan, the Assistant Superintendent over Finance, testified that the salary schedule for bookkeeper/secretaries was based on years of experience.  McMillan Dep. 62 (Ex. 8 to Pl. Response).  McMillan also testified that "years of experience" for the purposes of District Four's salary schedule equates to total years of relevant experience, not just in-district experience. McMillan Dep. 25; 2009-2010 Bookkeeper/Secretary Salary Schedule (Ex. 12 to Pl. Response).

Prior to receiving the consolidation letter in April of 2011, Plaintiff raised a concern regarding a teacher's treatment of her daughter.  Pl. Dep. 101-04; Elkins Dep. Ex. 2.  Plaintiff's daughter, a student at Dillon High School, was instructed by a white teacher, Beth Hinson, to "move to the back of the class, because [the teacher] could not stand to see her face." Pl. Dep.  104-105. On another occasion, the same teacher informed Plaintiff's daughter that she was ignorant, that she would not be giving her a recommendation for nursing school, and that the teacher was going to make her weekend miserable.  Pl. Dep. 104; Parent Complaint (Ex. 11 to Pl. Response).  Plaintiff complained, as a parent, to Defendant Rogers about the incidents. Parent Complaint. The teacher admitted to Defendant Rogers that she told Plaintiff's daughter to move to the back of the class because she was tired of hearing her voice.  Rogers Dep. 20 (Ex. 6 to Pl. Response); Parent Complaint.

Plaintiff, at the direction of Defendant Rogers, brought her complaint before the District's

Board of Trustees (the Board). Pl. Dep. 107-108; Rogers Dep. 21-22. At the Board meeting, Plaintiff raised a prior issue where the parents of a white student had complained that a black teacher told their child that he could not eat in class, and that teacher was terminated. Pl. Dep. pp. 108-110. Plaintiff informed the Board that she considered the same to be a "race issue." Pl. Dep. 110. Plaintiff was not made aware of any discipline given to Hinson as a result of her complaint to the Board. Pl. Dep. 114. According to Defendant Rogers, Hinson was given a letter of reprimand as a result of her conduct. Rogers Dep. 22.

On July 27, 2011, Plaintiff advised her supervisor that she was having difficulty with leave reports she was working on for food service employees. Pl. Dep. 81. Plaintiff's supervisor asked Frances McDuffie, an employee in District Four's Finance Department, to assist Plaintiff with the reports. Pl. Dep. 82. McDuffie used her assigned log-in to sign in to Plaintiff's computer and provided Plaintiff with the requested assistance. Pl. Dep. 82-83. When McDuffie left her office, Plaintiff accessed and printed additional information, including payroll information for one black and four white employees: Pam Davis, Frances McDuffie, Jean Moody, Tammy Ross, and Katherine Thompson. Pl. Dep. 85-86. Plaintiff testified:

> I was curious at that time to find out what w[ere] the salaries of some of the white secretaries that they said we w[ere] all on the same pay scale. I said let me see what they were making. And when I pulled up a couple of them, I said, okay, they were lying to me the whole time. They said that we w[ere] all on the same pay scale.

Pl. Dep. 82-83. The database system from which Thomas obtained the payroll information included sensitive information such as social security numbers and bank account information. McMillan Dep. 50-51.[1]   Plaintiff did not have authority to access this information and would not have been able to

---

[1]Plaintiff asserts that the information she downloaded did not contain bank account information; however, she does not address whether the database she accessed contained such

access it from her account.  Pl. Dep. 83-84.

Plaintiff provided the payroll information to a representative of the local NAACP, Beaufort McLaughlin, who then requested that Superintendent Rogers schedule a meeting with Plaintiff and him. That meeting was held on August 10, 2011.[2] During that meeting, which also was attended by Polly Elkins, Assistant Superintendent over Personnel, and McMillan, Plaintiff presented the payroll information she had obtained two weeks earlier.  Elkins Dep. 32-34, 72-73. Rogers informed Plaintiff that she did not have the authority to access that information and requested that she return it.  McMillan Dep. 50-51; Elkins Dep. 74; Rogers Dep. 31, 61. Plaintiff refused and claimed that she had the right to keep and otherwise disclose the documents pursuant to freedom of information laws. Elkins Dep. 34.

On August 15, 2011, Plaintiff filed a formal written grievance stating, in part:

> I am submitting this written grievance because I believe I have been treated unfairly. After I complained of a white teacher's inappropriate conduct with my daughter, I received a reduction in salary in the amount of $5,700. Mr. Rogers stated my salary was reduced because all secretaries' salaries must be the same. I have reasons to believe some secretaries on the same level, class, and category [are] paid at a higher rate than listed on the Daily Salary Schedule approved by the District. I further believe that white secretaries are paid more than African Americans with similar responsibilities, regardless of years of experience.

Grievance Letter (Ex. 16 to Pl. Response).

Also on August 15, 2011, a board meeting was held during which Rogers recommended that

---

information. Pl. Dep. 158.

[2]Following this meeting, McLaughlin noted District Four's (and predecessor District Two's) long history of paying African-American employees less than white employees, and recommended that the "files be turned over to the state conference for further action."  McLaughlin Note (Ex. 19 to Pl. Motion).  Thereafter, sometime around Thanksgiving of 2011, McLaughlin was offered a consultant's position with the Defendant District where he would earn $500 per day as a teacher's aide on an as needed basis.  McMillan Dep. 65-66; McLaughlin Dep. 10.

Plaintiff be terminated, and the Board accepted the recommendation.  Elkins Dep. 53.  By letter dated August 15, 2011, Thomas was advised of her termination effective August 16, 2011.  Pl. Dep. 115; Termination Letter (Elkins Dep. Ex. 5).  The letter stated that Plaintiff had "wrongfully appropriated massive amounts of employee payroll information from Dillon County School District Four computer files reflecting employee names, addresses, social security numbers, and bank account numbers," "refused to identify the person[s] who enabled [her] to access the information," "threatened, in writing, to bring suit against School District Four," "demanded" that her salary be raised, and voiced her belief that the payroll information taken was properly hers and that she intended to publicize it and distribute it however she wanted.  Termination Letter.  The letter further stated that she was "not at liberty to wrongfully take school district property and use it or threaten to use it in ways that would wreck the lives of fellow employees.  Such egregious and contemptible behavior, so filled with the potential for wrecking individual lives and sabotaging your employer's property, cannot and will not be tolerated."  Termination Letter.  Rogers notified Plaintiff of her termination on August 16, 2011, and directed a police officer to monitor her as she left campus.  Rogers Dep. 78.  Shortly after Plaintiff's termination, her position was filled by Beverly Townsend, who is African-American.  Rogers Aff. ¶ 6.

Following Plaintiff's termination, Rogers contacted law enforcement to ensure that the District had appropriately addressed the data breach.  Rogers Dep. 59-61.  The District informed the affected employees that their social security numbers had been accessed.  Rogers Dep. 78.  However, the solicitor informed Rogers that Plaintiff's actions did not merit prosecution as long as the information she accessed was not used to harm the affected employees.  Rogers Dep. 59-60.

Plaintiff's ex-husband informed her that each of the Individual Defendants were "telling

-6-

people in the community that [she] stole documents, and they [were] looking to press charges on [her]." Pl. Dep. 120. Plaintiff further testified that, following her termination, various members of the community approached her and referenced that they had heard she was fired for stealing documents. Pl. Dep. 120. Defendant McMillan's wife, then a friend of Plaintiff, informed her that she had been told Plaintiff was terminated for stealing documents. Pl. Dep. 121.

## III.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."

Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Plaintiff asserts several causes of action in this case: (1) a Title VII race discrimination claim with respect to her salary, (2) a Title VII race discrimination claim with respect to her termination, (3) a Title VII retaliation claim, (4) a discrimination claim under 42 U.S.C. § 1981, (5) claims under 42 U.S.C. § 1983, (6) a state-law defamation claim, and (7) a state-law civil conspiracy claim.

### A.    Title VII and § 1981 Discrimination Claims and § 1983 Equal Protection Claim[3]

#### 1.    Proof Schemes

Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to

---

[3]The standards applicable to lawsuits under Title VII, § 1981, and equal protection claims under § 1983 are essentially the same, and the same case law is used to evaluate claims under those statutes. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir.2002) ("In analyzing a claim ... under section 1981, we apply the same standards as in a similar Title VII claim."); Abasiekong v. City of Shelby, 744 F.2d 1055, 1058 (4th Cir.1984) (holding that equal protection claim based on employment discrimination is established through the same proof scheme used to prove claims asserted under Title VII); Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va.1995); Bartee v. Morris, 149 F.3d 1167 (4th Cir. 1998).

hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, a plaintiff may proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id.  The elements of a prima facie case differ depending on the nature of the claim.  Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000).  If Plaintiff establishes a prima facie case, the burden shifts to Defendants to produce a legitimate, nondiscriminatory reason for the disparate treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).  Once Defendants have met their burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendants is not its true reason, but was pretext for discrimination. Reeves, 530 U.S. at 143.

In addition, a Plaintiff may establish through direct or circumstantial proof that a protected characteristic such as race was a motivating factor in the employer's adverse decision. See Diamond

v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir.2005); Hill v. Lockheed Martin

Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir.2004) (en banc). Direct evidence is defined

as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude

and that bear directly on the contested employment decision." Warch v. Ohio Cas. Ins. Co., 435 F.3d

510, 520 (4th Cir.2006) (internal quotations omitted). Direct evidence is said to prove a fact "without

any inference or presumptions." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th

Cir.1995).  Circumstantial evidence must be of sufficient probative force to raise a genuine dispute

of material fact.  Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir.

1996).

 Plaintiff argues that she can establish her race-based discrimination claims under both

avenues of proof.

### 2. Disparate Pay Claim

#### a. Burden-Shifting Scheme

 To establish a prima facie case of wage discrimination under Title VII a plaintiff must show

that (1) she is a member of a protected class; (2) she was paid less than an employee outside the

class; and (3) the higher paid employee was performing a substantially similar job. Brinkley–Obu

v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir.1994); Kess v. Municipal Emps. Credit Union

of Baltimore, Inc., 319 F.Supp.2d 637, 644 (D.Md.2004).  Defendants concede that Plaintiff meets

the first two elements of the prima facie case.  However, they argue that Plaintiff has failed to present

sufficient evidence to show that the higher paid employees were performing substantially similar

jobs.

 Plaintiff must present evidence indicating that the employees she has identified as

comparators are "similarly situated" to her in all relevant respects. Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089 (citing McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817) ("[I]t is the plaintiff's task to demonstrate that similarly-situated employees were not treated equally."). "A plaintiff need not prove that her job is identical to a higher paid job; rather, the test is one of substantial equality." Lovell v. BBNT Solutions, LLC, 295 F.Supp.2d 611, 618-19 (E.D.Va.2003). Jobs are substantially similar if they "have a 'common core' of tasks, i.e., significant portions of the two jobs are identical"; such an inquiry "turns on whether the differing or additional tasks require greater skill or responsibility." Hassman v. Valley Motors, Inc., 790 F.Supp. 564, 567 (D.Md.1992)[4]; see also Siraj v. Hermitage in N. Va., 51 Fed. Appx. 102, 112-13 (4th Cir.2002) (stating that "two parties are similarly situated if their job requirements are similar in the level of competency, education, and requirements"). "Skill is a function of experience, training, education, and ability, and is measured in terms of the 'performance requirements' of the job. Responsibility measures, among other things, the degree of 'accountability' to higher-ups." Hassman, 790 F.Supp. at 567-68; see also Strag v. Board of Treasurers, 55 F.3d 943, 950 (4th Cir.1995) (stating that the plaintiff must be "performing work substantially equal in skill, effort and responsibility to her comparator under similar working conditions").

Plaintiff names five comparators whom she believes had substantially similar jobs but were paid more than Plaintiff: Frances McDuffie, Jean Moody, Tammy Ross, Katherine Thompson, and Pam Davis. The Master Pay Sheets accessed by Plaintiff reveal the following information:

---

[4]Hassman involves claims under both Title VII and the Equal Pay Act (EPA). The court noted that the discrimination provisions of Title VII and the EPA are construed "in harmony," and that the same three elements of a prima facie case are necessary to establish a claim under either statute. Hassman, 790 F.Supp. at 569 (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir.1989); Brewster v. Barnes, 788 F.2d 985, 991 (4th Cir.1986)).

| Employee | Race | Class | Department | Location | Years Exp. | Salary |
|----------|------|-------|------------|----------|------------|--------|
| McDuffie | W | Bkkps,Sec,Assts | Fiscal Services | Dillon School District | 25 | $39,077 |
| Moody | W | Bkkps,Sec,Assts | Staff Services | Dillon School District | 20 | $39,077 |
| Ross | W | Bkkps,Sec,Assts | Supervisor of Spec Proj | Dillon School District | 21 | $31,577 |
| Thompson | W | Bkkps,Sec,Assts | Office of Superintendent | Dillon School District | 28 | $39,077 |
| Davis | B | Bkkps,Sec,Assts | Fiscal Services | Dillon School District | 27 | $31,577 |
| Plaintiff | B | Bkkps,Sec,Assts | Food Service | Food Service | 22 | $25,854 |

Master Pay Sheets (Ex. 13 to Pl. Response). These comparators were also in the same salary class (II) and category (Bkkps & Sec) as Plaintiff. Master Pay Sheets.

In addition, Plaintiff testified in her deposition that when she originally complained about her salary following the consolidation of districts, she was told that "all secretaries and bookkeepers had to stay on the same pay scale." Pl. Dep. 74. When asked at his deposition whether he told Plaintiff this, McMillan responded, "I might have told her that, too." McMillan Dep. 62. McMillan testified that years of experience for the purposes of District Four's salary schedule includes total years of relevant experience, not just in-district experience. See, e.g., 2009-2010 Bookkeeper/Secretary Salary Schedule (Ex. 12 to Pl. Response); McMillan Dep. 25. Plaintiff argues that, based upon McMillan's statement that all secretaries and bookkeepers had to stay on the same pay scale, the relevant or material factor for determining whether the comparators were performing a substantially similar job as Plaintiff is their job classification. Because the Master Pay Sheets indicate that Plaintiff and each of the comparators were in the same class of bookkeepers, secretaries

and assistants, Plaintiff argues she has established that employees performing a substantially similar job were being paid more than she was.

Defendants argue that each of the employees identified by Plaintiff are secretaries/bookkeepers who work directly for either the District Superintendent (Rogers) or Associate Superintendents (Elkins and McMillan). McMillan and Elkins testified in their depositions that the secretaries/bookkeepers who work for the Superintendent and Associate Superintendents have individually set salaries and are not paid pursuant to District Four's classified employee salary schedule.[5] McMillan Dep. 38-40; Elkins Dep. 95-96. In addition, Rogers averred

---

[5]    Defendants note that other white secretaries/bookkeepers who did not work directly for the District Superintendent or Associate Superintendents were paid on the same pay scale as Plaintiff. Rogers Aff. ¶ 5. In his affidavit, Rogers states that Janice Adams, who also worked in food services, Debra Rouse, Susan Shuttleworth, Rosemary Whittington, Lenetta Rogers, Eunice Moore, and Faye Bailey, were all paid according to the same pay schedule as Plaintiff. Rogers Aff. ¶ 5. However, Plaintiff objects to this averment, and the undersigned agrees that there is no evidence in the record regarding the departments in which these employees worked (other than Adams), their years of experience, or their salaries that would allow the court to reach any conclusions regarding similarities between them and Plaintiff.

Rogers also attaches to his affidavit a document entitled "Salary Schedule for the 2011-2012 School Year." Rogers Aff. Ex. A. This document specifically lists each of the comparators named by Plaintiff (as well as others) under the category "District Staff" and includes their salaries. Other categories, such as "Maintenance Staff" and "Secretaries/Bookkeepers," do not specifically list the employees within that category, but set forth the daily rate according to years of experience. Plaintiff objects to this exhibit, arguing that (1) Defendants have not authenticated the document pursuant to Federal Rule of Evidence 901, (2) Rogers testified in his deposition that no such document existed, and (3) they produced it on the last day of the discovery period despite several requests by Plaintiff for comparator information.

The court can only consider admissible evidence in ruling on a motion for summary judgment. See Fed.R.Civ.P. 56(c)(2). Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). Rogers did not attempt to authenticate the salary schedule in his affidavit and Defendants have failed to provide the court with any foundation, authentication, or certification that the salary schedule is legitimate despite Plaintiff's concern about it's authenticity. That the document was produced during discovery is insufficient to authenticate the document. See, e.g. Iraheta v. Lam Yuen, LLC, No. CBD-12-1426, 2013 WL 6713219, *5 (D.Md. Dec. 18, 2013) ("Rule 56 and Fourth Circuit jurisprudence

that the job duties of the administrative staff assigned to the Superintendent and Associate Superintendents included a "significant level of discretion and independent decision-making, initiative, and responsibility. Rogers Aff. ¶ 7. He averred that, as a food services secretary, Plaintiff's job duties were "perfunctory and non-discretionary. Her primary duties included inputting food service order[s] developed and determined by others and recording absences of food services workers." Rogers Aff. ¶ 8. Plaintiff testified that she had no first-hand knowledge of the job duties performed by Thompson, Moody or Davis. Pl. Dep. 94-96. She testified that McDuffie had some of the same duties that she did because they both worked in the same system, although McDuffie "had a massive amount of people versus the limited ones that I had." Pl. Dep. 95.

In her response, Plaintiff argues that "the sole factor for a permissible variance on the bookkeeper/secretary pay scale was years of experience," and that "work location and responsibilities are irrelevant to the case's wage analysis." Pl. Resp. p. 16. She bases these conclusions upon her recollection that she was told (she does not testify by whom) that "all secretaries and bookkeepers had to stay on the same pay scale," Pl. Dep. 74, and McMillan's testimony that he "may have told her that." McMillan Dep. 62. She does not address Defendants' argument that the jobs held by Plaintiff's comparators were not substantially similar because they were in different departments with differing responsibilities, other than to state that these factors are irrelevant. However, as stated above, jobs are substantially similar if they "have a 'common core' of tasks, i.e., significant portions of the two jobs are identical;" such an inquiry "turns on whether the differing or additional tasks

_____

make it clear that the Court cannot merely rely on documents produced in discovery."). Because Defendants have not authenticated the "Salary Schedule for the 2011-2012 School Year" attached as attachment A to Rogers' Affidavit, the undersigned will not consider it in this motion for summary judgment.

require greater skill or responsibility." Hassman v. Valley Motors, Inc., 790 F.Supp. 564, 567 (D.Md.1992). Nevertheless, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," Burdine, 450 U.S. at 253, and Plaintiff has presented sufficient evidence of similarity between herself and her comparators to establish a prima facie case of discrimination with respect to her salary.

Accordingly, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the difference in salary. Defendants state that Plaintiff was paid less than the individuals she identified because those individuals worked for either the Superintendent or Associate Superintendents and had different job responsibilities. McMillan Dep. 38-40; Elkins Dep. 95-96. Rogers averred that the job duties of the administrative staff assigned to the Superintendent and Associate Superintendents included a "significant level of discretion and independent decision-making, initiative, and responsibility. Rogers Aff. ¶ 7. He averred that, as a food services secretary, Plaintiff's job duties were "perfunctory and non-discretionary. Her primary duties included inputting food service order[s] developed and determined by others and recording absences of food services workers." Rogers Aff. ¶ 8. Defendants' burden here is one of production, not persuasion. Burdine, 450 U.S. at 254. Thus, even though these facts were not sufficient to prevent Plaintiff from establishing a prima facie case of discrimination, differing job responsibilities is a legitimate reason to pay employees differing salaries, therefore, the burden shifts back to Plaintiff to show that this reason is not the real reason for the disparity in pay, but is merely pretext for a discriminatory reason.

A plaintiff may establish that a defendant's proffered reason for an employment action is pretext for a discriminatory action by showing that it "is unworthy of credence" or "false." Reeves, 530 U.S. at 147. Plaintiff argues that Defendants' reason for the wage disparity is unworthy of

credence because it contradicts information she was given prior to discovering the differing salaries. Plaintiff testifies that someone told her that all secretaries/bookkeepers were on the same pay scale. Her subsequent discovery that all secretaries/bookkeepers were not on the same scale, and that white secretaries/bookkeepers were being paid more than black secretaries/bookkeepers with more years of experience is sufficient to create an issue of fact at the pretext stage. As such, it is unnecessary to address Plaintiff's claim under the direct method of proof. Summary judgment on Plaintiff's wage disparity claim should be denied.

### 3. Wrongful Termination Claim

#### a. Burden-Shifting Scheme

Plaintiff also argues that Defendants terminated her employment for discriminatory reasons. To establish a prima facie case of race discrimination in a termination, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004). The fourth element can also be established by presenting evidence raising an inference of discrimination. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n. 2 (4th Cir.2001) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Here, Defendants argue that Plaintiff cannot show she was performing her job duties at a level that met her employer's legitimate expectations at the time of her termination because she violated several District Four policies when she accessed payroll records through another employee's

log-in information.

Plaintiff argues that she did not have a disciplinary record aside from her termination and points to the testimony of Elkins and Rogers that she was a good employee. Elkins testified in her deposition that she had always thought of Plaintiff as a good employee until she learned about Plaintiff accessing the payroll information. Elkins Dep. 18-19. She testified that she was "amazed because [she] did not know that would have ever happened." Elkins Dep. 19. Rogers testified that he and Plaintiff "got along fine . . . until we had the situation with the child and then with the salary, the consolidation." Rogers Dep. 12. When asked whether Plaintiff had ever been dishonest to him, Rogers replied, "not to my knowledge." Rogers Dep. 12.

When determining whether an employee is meeting her employer's legitimate expectations, it is the perception of the employer, not the employee, that is relevant. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir.2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir.1996)). While Plaintiff presents evidence that Rogers, the District Superintendent, and Elkins, the Associate Superintendent for Human Resources, felt she was a good employee prior to her decision to access the payroll records, the relevant time to evaluate an employee's performance is at the time of the adverse action. See, e.g., Miles, 429 F.3d at 485. At the time Plaintiff was terminated, she had accessed other employees' payroll records under another employee's log-in information, attempted to use the records to leverage her position that she was entitled to an increase in her salary, and refused to return the information when asked. Plaintiff admitted several times during her deposition that she did not have authority to access the payroll information. Pl. Dep. 82-

-17-

84, 88, 100.

In addition, Defendants argue that Plaintiff cannot establish a prima facie case of race discrimination with respect to her termination because her position was filled by an African-American woman. Plaintiff does not dispute this fact, but argues that it is not dispositive. "To make out a prima facie case of discriminatory termination, a plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class." Brown v. McLean, 159 F.3d 898, 905 (4th Cir.1998). However, the Brown court noted that "there may be exceptions to this rule in limited situations." Id. at 905. In Miles v. Dell, 429 F.3d 480 (4th Cir. 2005), the court noted that in determining whether an exception to prong four is appropriate, the court must consider the purpose of that prong, namely, that if someone within the protected class fills the plaintiff's position, that fact normally gives rise to an inference that the defendant did not fire the plaintiff based upon her protected status. Id. at 488. The Miles court continued:

> However, replacement within the protected class does not always give rise to an inference of non-discrimination. One clear example of this is when the defendant hires someone from within the plaintiff's protected class in order "to disguise its act of discrimination toward the plaintiff."

Id. (citing Brown, 159 F.3d at 905-06).

Here, Plaintiff points to evidence that she claims shows that District Four hired an African-American woman to fill her position in an attempt to disguise it's act of discrimination against her. She testified during her deposition that at some point after she reported the salary disparity between white and black bookkeeper/secretaries, one of the "underpaid" black bookkeeper/secretaries, Pam Davis, was given an $8,000 raise after she had already been given a separate supplement to her salary at the beginning of the 2011-12 school year. Pl. Dep. 114; McMillan Dep. 40-41. McMillan

-18-

testified that Davis received the $8,000 dollar supplement when she took on additional duties. McMillan Dep. 41. Plaintiff argues this evidence is sufficient to create an issue of fact as to whether District Four hired an African-American woman to fill her position in an attempt to disguise discriminatory motives. However, reaching such a conclusion would require the court to speculate on more than one level. First, there is no evidence to dispute that Davis did take on additional responsibilities, and therefore, the court would have to speculate that the reason Davis received a supplement to her salary was not because she took on additional duties, but in an attempt to disguise a disparity in wages. Then, the court would again have to speculate that, if District Four would attempt to disguise discriminatory salaries by increasing an African-American employee's pay, it would also attempt to disguise a discriminatory termination by hiring someone within Plaintiff's protected class to fill her position. The evidence in the record is insufficient to create a genuine issue of fact of an inference of discrimination.

Plaintiff also argues that the disparity in wages between her and white employees, the increase in salary for Davis, and the fact that a white employee who used his position for financial gain was not terminated, are sufficient to give rise to an inference of discrimination such that she can establish a prima facie case of discrimination with respect to her termination. Plaintiff identifies two employees, one white and one black, who used discarded District property for financial gain. Rogers Dep. 66-69. After the issue was discovered, both employees were cooperative and paid restitution for the money they received. Rogers Dep. 85. These employees were demoted but not terminated. Rogers Dep. 68-69. Rogers testified that, while the two employees discussed above did violate policy, they were essentially selling District Four trash. Rogers Dep. 66-69, 85. Both employees made restitution and cooperated with the District, unlike Plaintiff, who was irate and refused to

return the information she had taken, telling Rogers and others that it was public information and she could distribute it in any way she deemed appropriate. Rogers Dep. 85. The incidents involving the other employees fail to give rise to an inference that Plaintiff's termination was based upon discriminatory motives.

For these reasons, because Plaintiff's position was filled by an African-American woman and she fails to present sufficient evidence to otherwise give rise to an inference of discrimination, she has failed to establish a prima facie case of wrongful termination.

Assuming arguendo Plaintiff has presented sufficient evidence to move past the prima facie stage, Defendants present a legitimate, non-discriminatory reason for her termination, that is, her unauthorized access of employee payroll information. Plaintiff argues that this reason is pretext for a discriminatory reason because Defendants have provided three different explanations for termination. See, e.g., E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001) ("[T]he fact that [the employer] has offered different justifications at different times for its failure to hire [an applicant] is, in and of itself, probative of pretext . . ..Moreover, a fact-finder could infer from the late appearance of [the employer's] current justification that it is a post-hac rationale, not a legitimate explanation . . .").

First, her termination letter dated August 15, 2011, stated that she "wrongfully appropriated massive amounts of employee payroll information . . . reflecting employee names, addresses, social security numbers, and bank account numbers" and that "[n]one of the purloin papers were documents [she was] authorized to access." Termination Letter. It further stated that she repeatedly refused to identify the person who enabled her to access the data, demanded that Rogers return the information to her, and threatened to bring suit against the district. Id. The letter informed Plaintiff that she was

at liberty to bring suit on any grounds she saw fit, but she was not at liberty to wrongfully take school district property and use it or threaten to use it in ways that would wreck the lives of fellow employees. Id.

Second, on or around September 1, 2011, the Claims Adjudicator for the South Carolina Department of Employment and Workforce (SCDEW) stated in its determination that Plaintiff was terminated for "violation of company policy." Claims Adjudicator Determination (Ex. 21 to Pl. Response). Plaintiff states that this explanation is distinct from the first explanation because Plaintiff's termination letter made no mention of violation of company policy. Defendants argue that Plaintiff here imputes the SCDEW's characterization of the reason for her termination to Defendants.

Third, Plaintiff argues that Defendants now assert in this lawsuit that Plaintiff violated District policies and accessed confidential payroll information without authorization.

Plaintiff's attempt to differentiate these explanations fails. At all times, District Four has maintained that Plaintiff was terminated for accessing and downloading information she did not have the authority to access. The fact that District Four later identified policies Plaintiff violated by her conduct does not amount to post-hac rationalization.

Plaintiff also argues that her conduct does not violate the policies cited by Defendants, and that it is "open to factual dispute" whether Plaintiff was or was not authorized to view and print off the subject salary information. However, as set forth above, Plaintiff states several times during her deposition that she did not have authorization to access the subject information. Furthermore, this court does not "sit as a super-personnel department, weighing the prudence of employment decisions made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir.2005); see also DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998) (same); Jiminez

-21-

v. Mary Washington Coll., 57 F.3d 369, 377 (4th Cir.1995) (holding Title VII is not a vehicle for substituting the judgment of a court for that of the employer).   It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir.2000) (quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir.1998).  In sum, the record does not give rise to any inference that Plaintiff was the victim of intentional discrimination with respect to her termination.  See Cook v. CSX Transp. Corp., 988 F.2d 507, 512 (4th Cir.1993) ("The question confronting a judge ... is whether the record as a whole gives rise to a reasonable inference of ... discriminatory conduct by the employer.").

### b.    Direct Method

Plaintiff also argues that she can create an issue of fact whether her termination was based upon discriminatory motives through the direct method of proof.  Direct evidence is defined as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir.2006) (internal quotations omitted). Direct evidence is said to prove a fact "without any inference or presumptions." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir.1995).  Circumstantial evidence must be of sufficient probative force to raise a genuine dispute of material fact.  Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996).

Plaintiff argues that she can establish her claim of race discrimination by showing a "convincing 'mosaic' of circumstantial evidence such that a reasonable jury could infer discriminatory intent."  Pl. Response p. 17.  Under this approach,

> [n]o single piece of evidence might amount to a smoking gun…but the convincing mosaic approach allows a plaintiff to establish Retaliation 'by assembling a number of pieces of evidence non meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction.…

Hobgood v. v. Ill. Gaming Bd., 731 F.3d 635, 647 (7th Cir. 2013); see also Cason v. S.C. State Ports Auth., 2:11–CV–2241–RMG, 2014 WL 588065, *4 (D.S.C. Feb. 14, 2014) (citing Hobgood).

Defendants note that the mosaic of circumstantial evidence theory has not been adopted by the Fourth Circuit, pointing to Giraldo v. City of Columbia, No. 3:12-cv-3357-JFA, 2014 WL 4700645 (D.S.C. Sept. 18, 2014), in which this court stated,

> [A]fter research, this Court can only find one case within the Fourth Circuit that cited and applied the mosaic theory, and it is the District of South Carolina case cited by Plaintiff. Nevertheless, this Court is not persuaded by the mosaic theory, or that application of the mosaic theory is binding. Further, Plaintiff has cited to no precedent establishing that the Fourth Circuit Court of Appeals has adopted the mosaic theory.

Id. at *2; see also Harrison v. S.C. Dep't of Mental Health, No. 3:12-cv-1754-JFA, 2014 WL 4700642, * 3 (D.S.C. Sept. 18, 2014).  Perhaps stated differently, the law in this circuit provides that when evaluating whether the plaintiff has proffered sufficient circumstantial evidence to sustain her claims in the face of a summary judgment motion, the court should consider whether, as a whole, the plaintiff has "presented probative circumstantial evidence to show that [the employer] acted with discriminatory animus." Warch, 435 F.3d at 521; see also Hill, 354 F.3d at 286; Evans, 80 F.3d at 959.   The court should consider the evidence as a whole rather than in isolation.  See, e.g., Cook v. CSX Trans. Corp., 988 F.2d 507, 512 (4th Cir.1993) ("To focus on one piece of the record without

considering the whole would distort the permissible inferences to be drawn.").[6]

Nevertheless, after setting forth what she believes to be the relevant law with respect to the direct method of proof, without further discussion, Plaintiff simply states that the evidence she has already discussed under the burden-shifting scheme is sufficient to prove discrimination under the direct method "without regard to rigid [sic] McDonnell Douglas framework." Pl. Response p. 28. This argument fails and, thus, because Plaintiff has failed to create an issue of fact with respect to her discriminatory termination claim under either method of proof, summary judgment is appropriate.

### 4.    Retaliation Claim

#### a.    Burden-Shifting Scheme

Plaintiff also argues that her termination was a result of retaliation. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a prima facie

---

[6]The court notes that in both Hobgood and Cason the "convincing mosaic of circumstantial evidence" approach is used with respect to the but-for analysis necessary in retaliation cases. Hobgood, 731 F.3d at 643-44; Cason, 2014 WL 588065, *4.

case, Defendants can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff must present evidence sufficient to create a genuine issue of material fact that Defendants' legitimate, non-retaliatory reason is pretextual. See Matvia v. Bald Head Island Management, 259 F.3d 261, 271 (4th Cir.2001).

Defendants concede that Plaintiff engaged in protected activity when she (1) complained about her pay, (2) complained about a teacher's treatment of her daughter and the District's lack of response to that complaint on racial grounds, and (2) delivered a letter to the district outlining these specific complaints. Defendants also concede that Plaintiff suffered an adverse employment action when she was terminated. However, they argue that Plaintiff cannot show a causal connection between her protected activities and her termination.

"[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price v. Thompson, 380 F.3d 209, 213 (4th Cir.2004). However, the temporal nexus between two events cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal quotation marks omitted).

Plaintiff first complained about her daughter's teacher in an April 19, 2011, letter, however, she did not mention any racial concerns in this letter. She later addressed the issue during a board meeting,[7] and she informed the Board of an incident involving a white student and a black teacher for which the teacher was fired. By letter dated May 19, 2011, Plaintiff was informed of her new

---

[7]The date of this board meeting is not in the record.

salary resulting from the district consolidation. At some point thereafter, she complained to Rogers and Elkin and asked that her salary be increased. She did not raise racial concerns at this time. On July 27, 2011, Plaintiff accessed the payroll information. She had a meeting to address the pay discrepancies on August 10, 2011, with Rogers, Elkins, McMillan, and an NAACP representative. She questioned why black employees were being paid less than white employees. On August 15, 2011, two things occurred. Plaintiff wrote a letter documenting her complaints of racial discrimination regarding her daughter's teacher and her salary. That same day, a board meeting was held during which the decision was made to terminate Plaintiff, and a letter was drafted to that end. It is not clear when Defendants received Plaintiff's letter in relation to the board meeting. Plaintiff was notified on August 16, 2011, of her termination.

Defendants argue that the only date relevant in considering temporal proximity is the date Plaintiff first raised racial concerns, which Defendants argue is April 19, 2011, when she wrote the letter complaining of her daughter's teacher. As an initial matter, the letter written by Plaintiff on April 19, 2011, does not raise any racial concerns–only concerns over the teacher's treatment of Plaintiff's child and Plaintiff's request that the teacher be disciplined in some way. Plaintiff raised her racial concerns in a subsequent board meeting, the date of which is not in the record.

Defendant cites Clark County School District v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001), in which the Supreme Court held that the appropriate date to consider with respect to temporal proximity is the date that the plaintiff first filed an EEOC complaint, rather than later correspondence on the same issue, there, the right-to-sue letter. However, the facts in the present case are distinguishable from those in Breeden. In Breeden, the EEOC complaint and the right to sue letter necessarily addressed the same issue. Here, the concerns raised by Plaintiff in the August

-26-

10, 2011, meeting, and her subsequent August 15, 2011, letter are different from the teacher concerns she raised previously. Plaintiff's termination five days after complaining to Defendants about wage disparities between white and black employees is sufficient to establish a causal connection between the two events. Accordingly, Plaintiff has presented a prima facie case of retaliation.

Next, as with the discrimination claims, Defendants state a legitimate, non-retaliatory reason for Plaintiff's termination, that is, her unauthorized access of employee payroll information. Again, the burden returns to Plaintiff to establish that the reason given for her termination was not the true reason but pretext for a retaliatory reason. At the pretext stage, Plaintiff must show that her protected activity was the "but-for" cause of the alleged adverse action and was not merely a motivating factor. " Foster v. University of Maryland-Eastern Shore, — F.3d —, 2015 WL 2405266, *5 (4th Cir. 2015) (holding that the "but-for" causation standard set forth in Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. —, 133 S.Ct. 2517, 2532–34, 186 L.Ed.2d 503 (2013), is no different than the long-held McDonnell Douglas "real reason" standard).

Plaintiff asserts the same pretext arguments here as she does with respect to her discriminatory termination claim. For the same reasons discussed above, those arguments fail. Plaintiff also argues that the termination letter she received, which mentioned her threat to file a lawsuit, shows that the reason given for her termination was actually pretext for retaliation. However, while the letter did mention that Plaintiff "threatened, in writing, to bring suit against School District Four," it also noted that Plaintiff "wrongfully appropriated massive amounts of employee payroll information from Dillon County School District Four computer files reflecting employee names, addresses, social security numbers, and bank account numbers," "refused to identify the person[s] who enabled [her] to access the information," "demanded" that her salary be

raised, and voiced her belief that the payroll information taken was properly hers and that she intended to publicize it and distribute it however she wanted. Termination Letter. The letter also provided that while Plaintiff was free to bring any sort of lawsuit she deemed appropriate, she was "not at liberty to wrongfully take school district property and use it or threaten to use it in ways that would wreck the lives of fellow employees. Such egregious and contemptible behavior, so filled with the potential for wrecking individual lives and sabotaging your employer's property, cannot and will not be tolerated." Termination Letter. Thus, the language in the termination letter regarding Plaintiff's threat to bring a lawsuit is insufficient to show that, but-for that threat (or any other protected activity), Plaintiff would not have been terminated. As such, Plaintiff's retaliation claim under the burden-shifting method of proof fails.

### b.     Direct Method

Plaintiff argues that she can also prove her retaliation claim under the direct method of proof. In Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. —, 133 S.Ct. 2517, 2532–34, 186 L.Ed.2d 503 (2013), the Supreme Court "significantly altered the causation standard for claims based on direct evidence of retaliatory animus by rejecting the 'mixed motive' theory of liability for retaliation claims." Foster, — F.3d. —, 2015 WL 2405266, * 4. Thus, at the pretext stage of a retaliation claim under the McDonnell Douglas burden-shifting method of proof or when proceeding via the direct method of proof, a plaintiff must establish that her protected activity was a but-for cause of the adverse employment action by the employer. Nassar, 133 S.Ct. at 2534.

As with her discrimination claims, Plaintiff's discussion of retaliation under the direct method of proof is sparse. She argues that her termination letter's explicit reference of protected activity and Rogers' deposition testimony that he got along with Plaintiff until she complained about

-28-

her daughter's teacher and her wages is direct evidence that she was terminated because of her protected activity. However, as discussed above with respect to the termination letter, it provides several examples of "egregious behavior" by Plaintiff such that any reference to her threat to bring a lawsuit cannot be said to have been the but-for cause of her termination. Furthermore, Rogers testified "I got along fine with [Plaintiff] until we had the situation with the child and then with the salary, the consolidation. But Cynthia and I always got along fine." Rogers Dep. 12. This testimony is insufficient to show that she was terminated in retaliation for her race discrimination complaints. Therefore, Plaintiff's retaliation claim fails under this method of proof as well.

In sum, Plaintiff fails to present sufficient evidence to create an issue of fact with respect to her Title VII and 1981 claims of discrimination and retaliation and summary judgment is appropriate.

**B.      Section 1983 First Amendment Claim**

Plaintiff also asserts claims under 42 U.S.C. § 1983 against the individual Defendants. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

-29-

In her complaint, Plaintiff does not explicitly identify the constitutional rights she alleges were violated by Defendants. She alleges that her rights were violated by "denial of a grievance process to Plaintiff to grieve her termination, the denial of Plaintiff's right as a parent to bring a complaint against a teacher who verbally accosted her child, the denial of racially fair treatment, and equal terms and conditions of employment. Complaint ¶ 60. In their motion for summary judgment, Defendants assume Plaintiff is alleging that her equal protection rights under the Fourteenth Amendment were violated, which has been discussed above in concert with her Title VII and § 1981 claims. However, in her response, Plaintiff argues that she has also alleged a freedom of speech claim under the First Amendment. In reply, Defendants argue that Plaintiff raises the freedom of speech claim for the first time in her response.

Defendants point to their previously filed motion to dismiss, in which they argued that Plaintiff failed to state a claim under § 1983. Def. Motion to Dismiss (Document # 7). In response to that motion, Plaintiff relied on an equal protection constitutional argument. Pl. Responses (Document # 12, pp.5-8, Document # 51, p.30). The undersigned filed a report and recommendation stating that dismissal of Plaintiff's §1983 claim was not appropriate because "Plaintiff alleges that white, similarly situated employees were systematically paid more than their black co-workers and sets forth specific factual allegations in support. These allegations are sufficient to state a claim for relief that is plausible on its face." Report and Recommendation (Document # 19) p. 19. Plaintiff argues that she did not address her First Amendment claim in response to Defendants' motion to dismiss because Defendants did not raise the issue in their motion. She further argues that the allegations in her pleadings are sufficient to allege a violation of the First Amendment.

A review of Plaintiff's Complaint, and specifically her fourth cause of action labeled,

-30-

"Violation of Civil Rights, 42 U.S.C. §§ 1981, 1983, and 1985," reveal allegations of racial discrimination and equal protection rights. The language within Plaintiff's complaint fails to sufficiently allege that she engaged in constitutionally protected speech or that Defendants retaliated against her for engaging in such speech, which is the argument raised by Plaintiff in her response.

To prevail on a First Amendment retaliation claim, a plaintiff must show (1) she engaged in protected expression regarding a matter of public concern; (2) her interest in First Amendment expression outweighs her employer's interests in efficient operation of the workplace; (3) she was deprived of some valuable benefit; and (4) a causal relationship exists between her protected expression on matters of public concern and the loss of the benefit. Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 316 (4th Cir.2006); Peters v. Jenny, 327 F.3d 307, 322 (4th Cir.2003).

The complaint is void of any specific allegations setting forth a First Amendment retaliation claim, and cannot reasonably be read as alleging such a claim. She cannot now raise the claim in her response to the motion for summary judgment. See, e.g., Christian Methodist Episcopal Church v. Montgomery, No. 4:04-22322-RBH, 2007 WL 172496, *6 (D.S.C. Jan. 18, 2007).[8]

## C.    Defamation

Plaintiff alleges that Rogers and the District defamed her when she was "arbitrarily removed from District premises by a police officer" and when Rogers "published to community leaders and others that Plaintiff was terminated for theft and may be facing criminal charges for the same." Complaint ¶ 66. The tort of defamation allows a plaintiff to recover for injury to her reputation as

---

[8]Even if Plaintiff had properly alleged a First Amendment retaliation claim, and assuming she had engaged in protected speech regarding a matter of public concern, for the same reasons discussed above, she cannot show that she would not have been terminated but for that protected speech. See Peters, 327 F.3d at 322 (holding that the causal relationship inquiry focuses on whether the loss of the benefit would have occurred but for the plaintiff's protected speech).

the result of the defendant's communications to others of a false message about the plaintiff.

Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 508, 506 S.E.2d 497, 501 (1998)

(Holtzscheiter II). Defamatory communications take two forms: libel and slander. Slander is a

spoken defamation while libel is a written defamation or one accomplished by actions or conduct.

Id.  To prove defamation, the plaintiff must show (1) a false and defamatory statement was made;

(2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4)

either actionability of the statement irrespective of special harm or the existence of special harm

caused by the publication.[9] Fleming v. Rose, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002);

Holtzscheiter II, 332 S.C. at 506, 506 S.E.2d at 518 (Toal, J., concurring).

Defendants first argue that Plaintiff fails to present sufficient evidence to create an issue of

fact with respect to publication.  They argue that Plaintiff fails to show that Defendants published

any statements about her termination.  Plaintiff testified

> A: It was told to me by my ex-husband that Mr. Rogers, Polly Elkins, and Art
> McMillan was telling people in the community that I stole documents, and they are
> looking to press charges on me.
> Q: And who did he hear that from?
> A: It was just in the community.

Pl. Dep. 20.

> A: Because they would ask me, "I heard you stole documents."
> Q: And who did they hear that from?
> A: From different people in the street and people in the -- like – now, my
> mother-in-law and them said that Mr. Rogers, Polly Elkins, and Ray was telling
> people in the community. So who told who to get back to my mother-in-law, for it
> to get back to me and other people to ask me did I steal documents, I can't really pin

---

[9]Slander is actionable per se under certain circumstances, and, in such cases, the law
presumes that the defendant acted with common law malice and that the plaintiff was damaged.
Holtzscheiter II, 332 S.C. at 511, 506 S.E.2d at 502.  For purposes of this motion, Defendants
assume that Plaintiff's allegations constitute slander per se.

-32-

it down to anything but that.

Pl. Dep. 122-23.

However, Plaintiff also testified that she told her friend, Ms. Graves; her aunt; a four-person committee at NAACP; Councilman Archie Scott; Bishop Goings; and Pastor Roundtree about her termination and that the reason given by the District for her termination was that she stole papers. Pl. Dep. 130, 146, 148, 150, 151. She also testified that she could have told others as well, but she could not remember. Pl. Dep. 146. Self-publication of an allegedly defamatory statement cannot support a defamation action against the originators of the statement. See Murray v. Holnam, Inc., 542 S.E.2d 743, 751, 344 S.C. 129, 145 (Ct.App. 2001).

Plaintiff also argues that the police escort required by the district when she was notified of her termination was defamatory. Rogers testified that is was a policy of District Four across the board to have a School Resource Officer available to monitor a terminated employee's departure from school premises. Rogers Dep. 78-79. "[A] post-termination security escort on its own is insufficient to state a claim for false insinuation defamation." Howard v. Allen Univ., C/A No. 3:11-2214, 2014 WL 66646, at *15 (D.S.C. Jan. 8, 2014) (unpublished) (adopting Report and Recommendation). Furthermore, there is no evidence in the record that anyone witnessed the resource officer in Plaintiff's presence at the time of her termination.

Also in support of her defamation claim, Plaintiff points to the fact that Rogers informed various bookkeeper/secretaries that their information had been taken. Rogers Dep. 78. However, Rogers testified that he did not inform the employees who accessed their information, although they were able to determine on their own that it was Plaintiff due to the timing of her termination. Rogers Dep. 80-81.

-33-

These facts are insufficient to show publication of the alleged defamatory statements by Rogers. Even if Rogers did publish defamatory statements, however, Defendants argue they are not liable because the communication was qualifiedly privileged. Qualified privilege is an affirmative defense to be raised by the defendant. Swinton Creek Nursery v. Edisto Farm Credit, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999). A statement is qualifiedly privileged if the speaker makes it in good faith on a subject about which he has an interest or duty and he makes the statement to a person with a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable. McBride v. School Dist. of Greenville Cnty., 389 S.C. 546, 698 S.E.2d 845, 853 (2010); Murray, 344 S.C. at 140-41, 542 S.E.2d at 749. Whether an occasion gives rise to a qualified or conditional privilege is a question of law for the court. Id.

The evidence in the record reveals only that Plaintiff's actions and the potential ramifications for those actions were discussed during the meeting requested by Plaintiff's NAACP representative; in meetings between Rogers, Elkins, and McMillian, including presentation of Roger's recommendation for termination to the Board of Trustees for action and decision; and with the solicitor to determine whether any legal action was appropriate. Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. Id. (citing Conwell v. Spur Oil Co., 240 S.C. 170, 125 S.E.2d 270 (1962)). The record reveals that any communications regarding Plaintiff's actions with respect to accessing and downloading payroll information were done in the usual course of business to determine the appropriate response to her conduct. For these reasons, summary judgment is appropriate on Plaintiff's defamation claim.

-34-

### D.    Civil Conspiracy

Plaintiff alleges in her complaint that the Individual Defendants acted "outside the scope of their employment and in abuse of their positions" by harassing her on a "day-to-day basis resulting in the sanctioned verbal abuse of her daughter, being essentially afforded the Siberia treatment within the District and in being terminated on baseless grounds." Complaint ¶ 72. She claims special damages, including ostracization, isolation, professional black-listing, stress and anxiety, a loss of companionship with her daughter, and attorney fees. Complaint ¶ 76.

In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct. App. 1989). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." Hackworth v. Greywood at Hammett, LLC, 385 S.C. 110, 682 S.E.2d 871, 874 (2009) (internal citations omitted). While general damages "are the immediate, direct, and proximate result of the" tortfeasor's conduct, special damages "are the natural, but not the necessary or usual, consequence of the" tortfeasor's conduct. Id. at 116–17, 682 S.E.2d at 875.

While Plaintiff sufficiently alleged special damages to survive Defendants' Rule 12(b)(6) motion previously, she has failed to present evidence to create an issue of fact in that regard.  In her response, Plaintiff argues that her claims of being "ostracized, isolated, [] essentially black-listed in her profession …[and] a loss of companionship with her daughter . . ." are special damages. However, Plaintiff fails to point to evidence in the record that her relationships, whether work-

-35-

related, with her daughter, or otherwise, suffered in way. Likewise, Plaintiff has failed to present evidence that she has been blacklisted. Therefore, she has not produced evidence of special damages and summary judgment is appropriate on this cause of action.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 48) be denied as to Plaintiff's wage disparity claim and granted on all other claims.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 24, 2015
Florence, South Carolina